# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

RAYSHAWN HUDGINS,

    Plaintiff,

    v.

GUY PIERCE,

    Defendant.

No. 05 CV 3465
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

### I. PROCEDURAL BACKGROUND

On January 14, 1999, following a bench trial in the Circuit Court of Cook County, Petitioner Rayshawn Hudgins was found guilty of ten counts of aggravated criminal sexual assault, seven counts of aggravated kidnaping, two counts of criminal sexual assault, two counts of kidnapping, one count of aggravated criminal sexual abuse, one count of aggravated unlawful restraint, and one count of unlawful restraint. Before sentencing, Mr. Hudgins filed a motion for a new trial, alleging insufficient evidence of guilt and ineffective assistance of counsel. Mr. Hudgins claimed that his original counsel failed to impeach the testimony of the victim and the witnesses of the other crimes, failed to present evidence supporting the conclusion that he was innocent, refused to allow him to testify, and stipulated to DNA evidence. Following a preliminary hearing, the trial court found no merit to the ineffective assistance of counsel claims and denied Mr. Hudgins's motion for a new trial.

On August 3, 1999, Mr. Hudgins was sentenced to an aggregate term of 95 years of imprisonment: 35 years for the first count of aggravated criminal sexual assault counts, 30 years for the second count of aggravated criminal sexual assault, and 30 years for one count of aggravated kidnapping. The circuit court did not sentence Mr. Hudgins on any of the other

charges. Mr. Hudgins appealed his conviction to the Illinois Appellate Court, First District, claiming: (1) that the trial court erred in allowing the State to introduce evidence of other kidnappings and sexual assaults alleged to have been committed by him, because there were insufficient similarities between the charged offense and the other crimes; (2) that Illinois' extended-term and consecutive sentencing schemes are unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because they subject a defendant to an increased punishment on the basis of facts not charged in the indictment nor proven at trial beyond a reasonable doubt;[1] (3) that the trial court erred in convicting him of two counts of aggravated criminal sexual assault, because one of the acts of criminal sexual assault served as the aggravating factor for the kidnapping conviction, and thus was a lesser included offense of aggravated kidnapping; (4) that the trial court failed to consider his rehabilitative potential as evidenced by his youth, lack of prior convictions, employment and family in imposing a 95-year cumulative sentence; and (5) that the trial court erred in failing to conduct an evidentiary hearing on the ineffective assistance claims raised in his post-trial motion. On December 28, 2001, the Appellate Court affirmed Mr. Hudgins's convictions on all three counts and the sentences for the aggravated criminal sexual assaults, but vacated the sentence for an included offense of aggravated kidnapping and remanded the case to the trial court for sentencing consistent with his conviction for aggravated kidnapping with an armed with a dangerous weapon aggravator. The court also

---

[1]In Illinois, aggravated criminal sexual assault and aggravated kidnaping carry a sentence range of not less than 6 nor more than 30 years imprisonment. 720 ILL. COMP. STAT. 5/10-12(b); 729 ILL. COMP. STAT. 5/12-14(d)(1); 730 ILL. COMP. STAT. 5/5-8-1(a)(3). The court can extend a sentence by not less than 30 nor more than 60 years imprisonment for any offender "convicted of aggravated criminal sexual assault . . . where the victim was under 18 years of age at the time of the commission of the offense." 730 ILL. COMP. STAT. 5/5-5-3.2(c); 730 ILL. COMP. STAT. 5/5-8-2(a)(2). The court extended one of Mr. Hudgins's sentences for aggravated criminal sexual assault by five years.

found that the trial court met its obligation to consider the ineffective assistance claims raised in Mr. Hudgins's post-trial motion and properly applied the *Strickland* test.[2] The Appellate Court noted that Mr. Hudgins's claim that his counsel denied him his right to testify was unfounded since the record demonstrates that the trial judge informed him of his right to testify, he said he was aware of this right, and declined to testify. The opinion was a careful and lengthy examination of the arguments on appeal.

Mr. Hudgins filed a petition for leave to appeal to the Illinois Supreme Court claiming: (1) his extended-term sentence violated *Apprendi* and cannot be saved by application of harmless-error analysis; (2) the trial court erred in failing to conduct an evidentiary hearing on the ineffective assistance claims raised in his post-trial motion denying him due process; (3) the trial court erred in allowing the State to introduce other crimes evidence because there were insufficient similarities between the other crimes and the charged offense; and (4) the appellate court erred in remanding the aggravated kidnapping count for re-sentencing with an armed with a dangerous weapon aggravator, because there was insufficient evidence presented at trial to find that he was armed. The Illinois Supreme Court denied his petition on April 2, 2003.

On August 12, 2002, Mr. Hudgins filed a *pro se* petition for post-conviction relief ("PCR"). Mr. Hudgins argued that (1) the evidence presented at trial was insufficient to sustain a finding of guilty beyond a reasonable doubt; (2) his trial counsel was ineffective for failing to present irrefutable evidence demonstrating that he could not have committed the charged offense, *i.e.*, that semen found on the rectal swabs taken from the victim could not have originated from

---

[2] For a convicted defendant to prevail on an ineffective assistance of counsel claim, the defendant must show that his counsel's representation fell below an objective standard of reasonableness and that there is a "reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 698 (1984).

3

him; (3) the trial court denied him equal protection when it allowed the State to make inflammatory statements for the sole purpose of prejudicing the court against him and aggravating the prejudicial impact of the other crimes evidence; (4) the trial court denied him equal protection when it allowed the State to make unfounded statements regarding the scientific evidence; and (5) the trial court denied him equal protection when it allowed one of the State's other crimes witnesses to give perjured testimony. On October 25, 2002, the trial court summarily denied Mr. Hudgins's PCR petition. Mr. Hudgins appealed that denial, arguing that the Circuit Court erred because, in claiming that trial counsel failed to present evidence which would have significantly undermined the testimony of one of the State's other crimes witnesses, he stated the gist of a valid claim of ineffective assistance of counsel. On June 24, 2004, the same panel of the Appellate Court (with one new Justice) affirmed the trial court's denial of Mr. Hudgins's PCR, holding in another careful opinion that his ineffective assistance claims were barred by *res judicata* and waiver.

Mr. Hudgins then filed a petition for leave to appeal to the Illinois Supreme Court arguing that: (1) the appellate court erred in applying a heightened pleading standard when reviewing the Circuit Court's dismissal of his PCR, and required him to prove the ultimate merits of his claims rather than simply meet the less stringent "gist" standard; (2) the appellate court erred in holding his claims were barred by *res judicata* and waiver, because *res judicata* and waiver are not proper grounds upon which to base a first-stage summary dismissal of a post-conviction petition; and (3) the appellate court misread the record and erroneously applied the doctrine of waiver in holding that one of his ineffective assistance claims was barred. On October 6, 2004, the Illinois Supreme Court denied Mr. Hudgins's post-conviction petition as well.

On May 26, 2005, Mr. Hudgins filed this petition for writ of habeas corpus in which he raised the following issues: (1) the trial court erred in allowing the State to introduce other crimes evidence where sufficient similarities did not exist between the other crimes and the charged offense; (2) trial counsel was ineffective for failing to present the following evidence to impeach the credibility of key State witnesses: (i) W.R. (one of the other crimes witnesses) examined photographs after his attack at Chicago Housing Authority ("CHA") Internal Affairs and failed to identify Mr. Hudgins as his attacker; (ii) W.R. recanted his entire story to two CHA inspectors; (iii) W.R., who claimed at trial to have gone home after the assault, was seen by his friend James at a party that night; (iv) W.R. claimed that his attacker dropped him off at 72nd and California, where he went into a Taco Bell to get directions home, but there is no Taco Bell in that area; (v) although W.R. claimed that his attacker pistol-whipped him at trial, W.R. never made such a claim in his initial report to police a day after the attack; (vi) although D.D. (the victim) claimed at trial to have been forced to perform oral sex on Mr. Hudgins, he never made such a claim in his initial report to the police; (vii) D.D.'s description to the police of his attacker was extremely general and vague, for example, he was unable to describe his attacker's eyes, hair, or complexion, and he reported that the attacker had a fat face (even though Mr. Hudgins does not have a fat face); and (viii) E.M. (another other crimes witness) was shown a line-up three times — first for facial identification, then for chest identification, and lastly for voice identification — and he was only able to identify Mr. Hudgins as his attacker in the chest-identification line-up; and, furthermore, his observations of his attacker were made through tiny holes in the baseball cap that had been placed over his face during the attack; (3) trial counsel was ineffective for stipulating to scientific evidence that did not exist; (4) he was not proven guilty beyond a reasonable doubt; (5) his extended-term sentence violates *Apprendi*; and (6) the cumulative

5

constitutional violations that occurred at his trial led to the conviction of one who is actually innocent.

## II.     STANDARD OF REVIEW

A federal court can only reach the merits of a petition for habeas corpus if the petitioner has exhausted all state court remedies and has first presented all of the constitutional claims in state court. 28 U.S.C. § 2254(c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). If I find that petitioner has failed to satisfy either requirement, the claim will be barred either for failure to exhaust state remedies or for procedural default. *Farrell v. Lane*, 939 F.2d 409, 410 (7th Cir. 1991). Habeas relief cannot be granted unless the state court's decision on matters of law was contrary to law as determined by the Supreme Court or was based on an unreasonable determination of the facts in light of the evidence presented. *Williams v. Taylor*, 529 U.S. 362, 406-410 (2000).

## III.    ANALYSIS

Since Petitioner has exhausted his state court remedies, I must first determine whether his claims are barred by procedural default. For the purposes of a state prisoner's habeas petition, procedural default occurs when either the petitioner failed to raise the issue through one complete round of direct appeal or post-conviction review, or the state court's decision rested on independent and adequate state law grounds. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Rodriguez v. Peters*, 63 F.3d 546, 555 (7th Cir. 1995). If one of these circumstances occurs, federal habeas review is only available if the petitioner can either show cause for the failure to comply with state procedural rules and that actual prejudice resulted from the alleged violation of federal law, or if the petitioner demonstrates that failure to consider his claims will result in "a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. The narrow

6

exception for a "fundamental miscarriage of justice" is limited to cases in which the "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Dretke v. Haley*, 541 U.S. 386, 393 (2004).

IV. **PROCEDURALLY DEFAULTED CLAIMS**

Several of the issues raised in Mr. Hudgins's ineffective assistance of counsel claim are procedurally defaulted. His claim that trial counsel failed to introduce evidence that W.R. was unable to identify his photograph, failed to introduce evidence that E.M was unable to identify him as the attacker in two lineups, and stipulated to scientific evidence that did not exist, were not presented to the state courts through one complete round of direct appeal and post-conviction review. In addition, his broad "not proven guilty beyond a reasonable doubt," and cumulative error claims are also procedurally defaulted.

The Illinois Appellate Court rejected Mr. Hudgins's claim that his trial counsel was ineffective for failing to introduce evidence that W.R. recanted his story on adequate state-law procedural grounds. The court found that Mr. Hudgins's trial counsel brought out the fact that W.R. recanted his story on cross-examination, and that since the facts providing the basis for this claim were on the face of the trial record and were raised in his post-trial motion, failure to raise the claim on direct appeal resulted in procedural default. The court applied the *Strickland* test and found that, notwithstanding the waiver, the claim lacked merit. This claim is either waived as a result of the procedural default or is a failed claim because the Appellate Court reasonably applied United States Supreme Court precedent to the facts in the record and reasonably concluded that there was no ineffectiveness of counsel.

Mr. Hudgins's claim that he was not proven guilty beyond a reasonable doubt is essentially being raised for the first time in this habeas petition. Mr. Hudgins did not make a

7

general "not proven guilty" claim in his direct appeal or his post-conviction proceedings. However, he did argue in both his direct appeal to the Illinois Appellate Court and his petition for leave to appeal to the Illinois Supreme Court that there was insufficient evidence to convict him of aggravated kidnapping with an armed with a dangerous weapon aggravator. Therefore, I will address this narrow claim on its merits.

Mr. Hudgins also claims that he is innocent, but was wrongfully convicted as a result of the cumulative constitutional violations that occurred at his trial. He did not raise this claim in state court, and he has not made a fundamental miscarriage of justice argument to excuse his default. *See Coleman*, 501 U.S. at 750.

To reach Petitioner's procedurally defaulted claims, he must show either: (1) both cause for the default and that actual prejudice resulted from a violation of federal law; or (2) that my failure to consider the claims will result in a fundamental miscarriage of justice, *i.e.* the constitutional violation has "probably resulted in the conviction of one who is actually innocent." *Dretke*, 541 U.S. at 393. Mr. Hudgins made no effort to show cause for his failure to raise the ineffective assistance claim relating to the stipulated scientific evidence in his habeas petition. However, in his response, he argued that, after the direct appeal concluded, a "new factual basis [was] discovered that materially and substantially supported the petitioner['s] claim of ineffective assistance of counsel . . . in the form of documentary evidence . . . establishing that counsel['s] stipulation had incriminated the petitioner with test results that 'did not exist.'"

Despite Mr. Hudgins's claim that this evidence is "newly discovered," it has already been raised at trial, in his post-trial motion, and in his post-conviction petition. The reports detailing these findings were also attached to the post-conviction petition as exhibits. To support a claim of actual innocence a petitioner must present "new reliable evidence . . . that was not presented at

trial" and must establish that "it was more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Gomez v. Jaimet*, 350 F.3d 673, 679 (7th Cir. 2003).

A petitioner who asserts actual innocence to excuse procedural default bears the burden of demonstrating his innocence – the state has the benefit of the guilty verdict. *Buie v. McAdory*, 341 F.3d 623, 627 (7th Cir. 2003). The evidence Mr. Hudgins is referring to indicates that semen was found on a rectal swab taken from the victim and that the DNA profile of the rectal swab matched the DNA profile of the victim but did not match Mr. Hudgins's DNA. This evidence in no way vindicates Mr. Hudgins, it merely demonstrates that the only DNA profile found on the rectal swab was the victim's own DNA, not that of a third person who might be charged with the offense. Mr. Hudgins is not entitled to habeas relief based on that result.

Mr. Hudgins does not attempt to establish cause or prejudice in his petition excusing his other procedurally defaulted claims, nor does he attempt to establish a "fundamental miscarriage of justice" which would permit me to reach the merits of those claims, thus I find these claims are barred from federal habeas review.

Next, Mr. Hudgins claims that the trial court erred in allowing the State to introduce other crimes evidence to show *modus operandi* because insufficient similarities existed between the charged offense and the other crimes evidence. His appellate brief states that the admission of the other crimes evidence "denied defendant a fair trial." However, the entire argument section of his brief addresses the issue in terms of state evidentiary law, and all of the cases he relied upon are Illinois state court cases applying state law. Unless I find that the "claimed error amounted to a fundamental defect so great that it inherently resulted in a complete miscarriage of justice," the conviction should stand. *See Cramer v. Fahner*, 683 F.2d 1376, 1385 (7th Cir.

9

1982). Federal habeas relief is not a remedy for errors of state law and a federal habeas court will not reexamine a state court's evidentiary rulings unless the ruling violated petitioner's federal constitutional rights. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Mr. Hudgins has not claimed the rulings violated his constitutional rights. If he had wanted to raise a claim that a state court's evidentiary ruling violated his rights, he should have raised it in both state and federal court. *See Duncan v. Henry*, 513 U.S. 364, 366 (1995). I noted too that this was a bench trial, and the risks that a jury of lay persons might be prejudiced by the mere fact that other crimes were shown is not present in the same way in a bench trial. A judge would normally hear such evidence as an offer of proof, even when it is not formally admitted.

## V. CLAIMS PRESERVED FOR HABEAS REVIEW

The remaining issues raised in Mr. Hudgins's petition, which I will decide on the merits, are the remainder of his ineffective assistance claim, his *Apprendi* claim and a narrow aspect of his not proven guilty claim. The portions of the ineffective assistance claim that have been preserved are his arguments concerning counsel's failure to present the following evidence: (1) W.R. had allegedly been seen by a friend at a party that night; (2) there is no Taco Bell in the area where W.R. claimed he was dropped off; (3) the victim never claimed that he was forced to perform oral sex on Mr. Hudgins in his initial report to the police; (4) W.R. never claimed that his attacker pistol-whipped him in his initial report to police the day after the attack; and (5) the victim's description of his attacker was general and vague.

### A.  *Ineffective Assistance of Counsel*

To establish a claim for ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that there is a

10

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. If an ineffectiveness claim can be disposed of on the grounds of lack of sufficient prejudice, the court does not need to consider whether counsel's performance was deficient. *Id.* at 699. There is a strong presumption that counsel's conduct was reasonable and every effort must be "made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

The state appellate court identified and applied the *Strickland* test to Mr. Hudgins's claims. The court found that all of the issues raised involved matters of impeachment and were a matter of trial strategy, not deficient performance or grounds for an ineffective assistance of counsel claim. The court noted that Mr. Hudgins never attached an affidavit of what W.R.'s friend would say, so it could not speculate as to what the friend would say. Attorneys have "wide latitude . . . in making tactical decisions" and a petitioner "must overcome the presumption, that under the circumstances, the challenged action might be considered sound strategy." *Id.* at 695. The appellate court did not make an unreasonable application of *Strickland* or an unreasonable interpretation of the facts as presented. Mr. Hudgins has also failed to demonstrate that but for counsel's performance the outcome of his trial would have likely been different.

     *B.*      Apprendi *Violation*

Mr. Hudgins claims that his extended term sentence, based on the age of the victim, violates *Apprendi* because the trial court did not make an explicit factual finding that the victim's age was proven at trial beyond a reasonable doubt. In *Apprendi*, the Supreme Court held that the due process clause of the Fourteenth Amendment requires that any fact that increases the penalty

for a state crime beyond the statutory maximum, other than a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt.  530 U.S. 466.  The appellate court agreed that the trial court had not made an explicit factual finding as to the victim's age, but held the *Apprendi* error harmless after determining that the evidence at trial was such that any rational trier of fact would have concluded beyond a reasonable doubt that the victim was less than 18 years of age if directed to do so, and because the victim's age was never contested.

There is no Supreme Court precedent on whether an *Apprendi* error can be held harmless.  However, the Supreme Court has long held that "a constitutional error does not automatically require reversal of a conviction." *Arizona. v. Fulminante*, 499 U.S. 279, 306 (1991) (*citing Chapman v. California*, 386 U.S. 18 (1967)).  "If the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other constitutional errors that may have occurred are subject to harmless-error analysis."  *Rose v. Clark*, 478 U.S. 570, 579 (1986).  The types of errors that defy harmless-error analysis are of the type that "deprive defendants of the 'basic protection' without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence." *Neder v. U.S.*, 527 U.S. 1, 9 (1999) (*quoting Rose* 478 U.S. at 577).  In *Neder*, a case addressing an analogous area of law, the Court held that an erroneous jury instruction which omitted an element of the offense, was subject to harmless-error review.  527 U.S. at 10.  I believe the Appellate Court applied the appropriate standard to the claim, therefore I find that its ruling is not contrary to Supreme Court precedent.

C.     *Insufficient Evidence*

Mr. Hudgins claims that there was insufficient evidence to prove beyond a reasonable doubt that he used a gun during the commission of the crime, and that he therefore should not

have been convicted of the count of aggravated kidnapping that relied on an armed with a dangerous weapon aggravator. The Antiterrorism and Effective Death Penalty Act ("AEDPA") which governs petitions for habeas corpus imposes a "highly deferential standard for evaluating state-court rulings" which "demands that state-court decisions be given the benefit of the doubt." 28 U.S.C. § 2254(d); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). When reviewing a conviction for sufficiency of the evidence, the threshold question is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). It is the "responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* The conviction will stand unless "the record contains no evidence, regardless of how it is weighed, upon which a rational trier of fact could find guilt beyond a reasonable doubt." *United States. v. Starks*, 309 F.3d 1017, 1021 (7th Cir. 2002).

The Illinois Appellate Court applied this standard to Mr. Hudgins's claim on direct appeal and found that the evidence introduced at trial was sufficient to support his conviction for aggravated kidnapping with an armed with a dangerous weapon aggravator. The Court reviewed the victim's trial court testimony and found that the "victim unconditionally asserted that [Mr. Hudgins] put a gun to his back." The trial court found the victim's direct testimony to be credible. The Appellate Court concluded that, based on the evidence, a rational trier of fact could have found the elements of the crime proven beyond a reasonable doubt. I find that the Appellate Court's ruling on this claim was not contrary to law, nor did it involve an unreasonable

determination of the facts in light of the evidence. Therefore, Mr. Hudgins is not entitled to habeas relief based on this claim.

    D.    *Actual Innocence*

Mr. Hudgins's final claim is a stand-alone "actual innocence" claim which he raises in a conclusory statement at the end of his habeas petition. However, an actual innocence claim is not a constitutional claim and does not itself state a ground for federal habeas relief. *Herrera v. Collins*, 506 U.S. 390, 404 (1993). These claims fall under the "fundamental miscarriage of justice" exception and merely serve as a "gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Id.* This exception is only available when a habeas petitioner supplements his barred constitutional claims with a showing of "factual innocence," it does not apply to stand-alone claims of actual innocence. *Id.* at 404-405 (*citing Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986)). Mr. Hudgins is not entitled to habeas relief based on his freestanding "actual innocence" claim, nor has he made a showing of actual innocence which would permit me to reach the other defaulted constitutional claims raised in his petition.

**VI.**    **CONCLUSION**

For the above reasons, Petitioner's petition for habeas corpus is DENIED.

                              ENTER:

                              James B. Zagel
                              United States District Judge

DATE: August 28, 2008